**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **CABATECH, LLC,** | : | **Case No.: 1:22-CV-00059-MWM** |
| | : | |
| **Plaintiff,** | : | **Judge: Matthew W. McFarland** |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **NEXTLIGHT, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

---

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
APPOINTMENT OF RECEIVER**

---

Now comes Plaintiff CABATech, LLC ("CABATech" or "Plaintiff"), by and through

counsel, and hereby submits its Reply to Defendant NextLight's ("NextLight" or "Defendant")

Memorandum Contra to Plaintiff's Emergency Motion for Appointment of Receiver, hereafter

"Motion" or "Plaintiff's Motion."

Plaintiff's Emergency Motion for Appointment of Receiver is not an extraordinary

measure because Defendant's business is not an ongoing concern involving rent, employees,

inventory, etc. Thus, this Court has the equitable powers necessary to exercise its discretion to

appoint a receiver to provide oversight of the collection of outstanding accounts receivable in the

interest of all creditors or interested parties.

Defendant's Memorandum in Opposition to Plaintiff's Motion implies that the failure to

pay suppliers and the downturn of its business was a natural consequence of market fluctuations

1

in the marijuana growing industry because people are going back to work and smoking less marijuana, instead of as a result of Defendant's mismanagement of business operations. This position that the marijuana industry is in a slump is not supported by fact.  The grow light industry, according to *Grand View Research*, saw a $20 million dollar market increase between the years of 2020 and 2021, not the slump in growth that Defendant claims in its Memorandum In Support. *Doc 21, P5, Defendant's Memo*. Presumably, based upon the representations of Nicholas Brumm in his email and in phone conversations with CABATech employees, Nextlight is not pivoting to a no-inventory business model but instead has already pivoted away from the business entirely. *Doc 18, P3, Plaintiff's Motion*. The wider grow lights industry did see sales continue, contrary to the claims brought by Defendant in its Memo; common sense dictates that Defendant's spurious excuses are just that and do not justify the failure to pay suppliers.

The single case that Defendant relies heavily on in its Memo does not govern this case and does not prevent the Court from exercising its discretion to appoint a receiver to oversee any remaining assets of Nextlight, that, presumably, are only accounts receivables based upon the representations of Mr. Brumm. The appointment of a receiver in this case would not be a drastic measure because Nextlight is not a "...solvent going business..." *Defendants Memo In Opposition, Page 6, quoting Pappas v. Medas*. Defendant cannot claim the protections of the Court's discretion when appointing a receiver while at the same time no longer operate the business as an ongoing concern. Defendant is arguing that it should continue to solely control its collection on outstanding receivables instead of a neutral third party that would prevent fraud, waste, and abuse. Critically, Defendant already admitted that it mismanaged its operations by failing to make prudent business decisions in order to safeguard profitability during slumps in

demand which has nothing to do with paying its bills to suppliers, the issue in the matter before this Court. *Doc 21, P5, Defendant's Memo*.

**Plaintiff does not need to first obtain a judgment before the Court can exercise its discretion in granting Plaintiff's Emergency Motion to Appoint a Receiver in this Case.**

The primary purpose of receiverships is to manage "efficient and orderly administration" of assets for the benefit of creditors. *Fidelity Bank, Nat'l Ass'n v. M.M. Group*, 77 F.3d 880, 1996 U.S. App. LEXIS 3721, 1996 FED App. 0075P, 3 (6th Cir.). Receiverships are meant to safeguard or administer disputed assets and to help the district court come to an equitable decision in the end. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Moreover, a receiver is an "indifferent person between parties," appointed by the court to manage assets during the pendency of the suit, "where it does not seem reasonable to the court that either party should" be managing those assets directly or without oversight. *Id* at 551 note 2. "It is a general rule…such receiver generally holds the property for the benefit of general creditors…" *In re K-T Sandwich Shoppe of Akron, Inc*., 34 F.2d 962, 1929 U.S. Dist. LEXIS 1539, 7 Ohio L. Abs. 525, 30 Ohio L. Rep. 101. A receiver in this matter is reasonable because the assets are in dispute, the power of appointment is within the discretion of the court, and a neutral receiver is in the best position to manage and make recommendations to the court about the most equitable distribution of assets.

Defendant employs the nonsensical argument that receivers can only be appointed by the Court to protect the interests of judgment Creditors. If Defendant's argument were sound, then absolutely no Defendant would have an interest in preserving assets to pay creditors in the course of business because by the time a judgment is obtained there would be no need for a receiver to oversee the expired assets. Additionally, under Defendant's distorted point of view, receiverships

3

would have no place in pending litigation because if a party already had a judgment, then the judgment creditor would just attach its interest to the debtor's assets without wasting time and expense on a receivership.

### Defendant's reliance on Compound Prop. Mgmt. is misplaced because it is distinguishable from the matter at hand.

Defendant incorrectly applies the facts of the matter before this Court to the District Court decision cited in Defendant's Memo, based entirely upon a U.S. Supreme Court decision in *Grupo Mexicano*. *See Defendant's Memo, page 7-8*. Those two cases that Defendant's argument rests upon had issues with a preliminary injunction being used solely to interfere with defendants use of assets, some not even in dispute. Above all, the appointment of a receiver does not interfere with debtor's use of property as was the issue in the Defendant's cited case. *Compound Prop. Mgmt.* at 12, quoting *Grupo*. The *Compound Prop. Mgmt*. decision cites to the U.S. Supreme Court's decision in *Grupo* which dealt with a preliminary injunction request by a plaintiff to prevent the debtor from using assets, distinguishable from this case before this Court. Defendant attempts to persuade this Court to follow a single case based upon a different set of facts and circumstances. The issue that the Court in *Compound Prop. Mgmt.* had with Plaintiff's petition was that they were seeking to prevent that defendant from using or transferring assets, similar to the circumstances in *Grupo*. The major difference in the case before this Court, which is fatal to Defendant's argument, is that a receiver does not prevent the debtor from using assets, quite the contrary; the receiver will operate any remaining part of the business in the best interests of all the parties involved. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d at 551. Whereas Defendant argues in its memo that it should be able to operate what is left of its business in only its interests, to the detriment of creditors and parties with interests in the

4

remaining assets held by Defendant. Thus, this Court is well within its authority and discretion to appoint a receiver in this matter.

Significantly, Defendant cannot point to any decision by any Court that follows the ruling in *Compound Prop. Mgmt.* The decision denying the receivership in that case centered on potential claims held by absent putative class members, yet to be added as parties to the case. Those facts are distinguishable from this matter because CABATech has an interest in the assets of Defendant. CABATech is not attempting to take over the assets of Defendant, but to have a neutral party, the receiver, oversee the management of the Defendant. Defendant is attempting to portray that the receiver is controlled by the Plaintiff. This is the furthest from the truth as all receivers report directly to the Court. Additionally, by citing *Compound Prop. Mgmt.* in its memo, Defendant conflates preliminary injunctions with appointments of receiverships. The issues cited in the decision by the Court in *Compound Prop. Mgmt.* are not relevant to this matter before the Court. Defendant cannot show that receivers are only appointed when the movant has a judgment, nor can Defendant show that the decision in *Compound Prop. Mgmt.* applies to the facts of this case because none of the issues central to that Court's decision are within this matter before this Court.

Defendant mistakenly contends that CABATech does not have a legal or equitable interest in the remaining assets of Defendant. In fact, CABATech has an equitable interest in the accounts receivable and any other remaining assets of Defendant because the claims of breach of contract and unjust enrichment are based upon Plaintiff's right to be paid pursuant to the contract or, in the alternative, the law of equity concerning the unjust enrichment of Defendant; otherwise, Plaintiff would have no standing to make those claims. CABATech, in its complaint, pled claims of breach of contract and unjust enrichment based upon Defendant's failure to pay

5

for the goods delivered by Plaintiff. *See Plaintiff's Complaint, Pages 5-7*. Even if this Court were to follow the *Compound Prop. Mgmt.* decision by requiring a movant to have an equitable interest to grant a receivership, a receiver would still be appointed here pursuant to CABATech's equitable interest in the remaining assets of Defendant.

CABATech delivered thousands of light fixtures to Defendant and was paid only a fraction of the amount in the invoices. *See Plaintiff's Complaint*. Defendant argues in its pleadings that it has offsets on the payments for those grow light units sold by Plaintiff because of warranty issues. *See Defendant's Answer at Paragraph 13, at 15 and 16.* Plaintiff's warranty provides that if a grow light product is defective, Plaintiff has the right to repair, replace or refund the purchase price – nothing more, nothing less. If Defendant succeeds on its warranty claims, then CABATech has an equitable right to accept returns of those allegedly defective units or repair them. Therefore, Plaintiff has an equitable right to those grow light units claimed by Defendant to have warranty issues that justify non-payment. Plaintiff's request for emergency appointment of a receiver should be granted on the foregoing alone because Defendant readily concedes that it no longer has a warehouse; this admission by Defendant is gravely concerning to CABATech's interest in the grow light products, or proceeds of their deliveries to Defendant, and the admission by Defendant pertains to the claims and counterclaims of both parties. A receiver is in the best position to fairly administer the winding down of Defendant's business operations and secure any remaining CABATech products or proceeds thereof.

**The Emergency Motion for Appointment of Receiver must be granted pursuant to Ohio R.C. 2735.01 because Federal Courts must follow the receivership appointment procedures of the state in which the District Court lives.**

Ohio law allows a court in its discretion to appoint a receiver based upon petition by plaintiff or a party whose interest in the property or proceeds thereof is probable and shown to be

in danger of being lost or materially injured. O.R.C. 2735.01. Federal Courts must follow the laws of the jurisdiction in which the District Court resides when deciding an application for appointment of a receiver. *United States v. Scherer*, 532 F. Supp. 3d 485, 2021 U.S. Dist. LEXIS 67876 (S.D. Ohio April 5, 2021). "The process for appointment must comport 'with the practice and procedure of the state in which the district court is held' unless 'any statute of the United States governs' instead. Fed R. Civ. P. 69." *Id* at 6. Ohio law grants the courts discretion to appoint a receiver when assets claimed by an interested plaintiff are in jeopardy of being lost or lessened. Here, Plaintiff does claim an interest in the assets of Defendant, being either the grow light fixtures themselves or the proceeds thereof. Defendant has admitted that it is no longer in the business; Defendant is without inventory, a warehouse, or employees. *See Defendant's Memo at 11.* The grow light products delivered by CABATech, in which it has an interest, and the proceeds that Defendant has received or may receive in the future, are at risk of loss without the oversight of a receiver acting in the best interests of all parties.

### Defendant misunderstands the factors for the Court to follow when granting a Motion to Appoint a Receiver.

Allegations of fraud are not necessary for a court to consider when granting a receivership motion. CABATech has argued for each of the other factors in its Emergency Motion. Defendant acknowledges that when considering whether to grant a receivership, a court reviews a constellation of factors. Fraud is just one of those factors that a movant ***may*** argue to satisfy the burden of granting a receivership. CABATech made arguments for each of the other factors that it feels are most prevalent and relevant to the Court's discretion in granting the receivership in this matter. When considering whether to appoint a receiver, the court considers the following factors: validity of the claim by the party seeking appointment; the probability that

fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be concealed, lost or its value diminished; inadequacy of legal remedies; lack of less drastic equitable remedy; and the likelihood that appointment will do more good than harm. De Boer Structures (USA), Inc. v. Shaffer Tent & Awning Co., 187 F. Supp.2d 910, 925 (S.D. Ohio 2001). A court may choose to exercise discretion to appoint a receiver based upon any of the factors, fraud is one factor out of six, and fraud need not be present for a court to grant a motion to appoint a receiver.

**The receivership should be granted because there is a substantial likelihood and imminent danger that Defendant will dissipate assets, CABATech has strong claims against Defendant, the receivership is the least drastic remedy, and the receiver is <u>unlikely</u> to do more harm than good to the defunct business.**

Defendant does not dispute the validity of CABATechs' claims that Defendant owes money for product purchased from CABATech.  There is an imminent danger that Plaintiff's property will be compromised because Defendant admits that no warehouse exists and that they are "pivoting" from the light business.  Further, the value of the delivered grow light units and the remaining assets of Defendant are in imminent danger of losing value based upon the representations of Defendant. *Doc 18, P4-7, Plaintiff's Motion*. No other remedy at law or less drastic measure will prevent the imminent danger to the property apart from granting this Motion. A neutral third party will protect the interests of Defendant as well as its creditors. The receiver will not do more harm than good because as Defendant argues, the cost-saving measures lessen the burden on the receiver to manage an unwieldly, ongoing business. The receiver will account for all remaining assets and allocate them fairly to each creditor in the order of their position.

**Legal authorities cited in CABATech's Motion are relevant and applicable to the facts at hand because CABATech has an interest in unpaid for products or proceeds therefrom.**

Defendant disingenuously claims that the "legal authorities Plaintiff cites in support of its Motion are inapposite to the facts of this case." *See Defendant's Memo* at 11. However, Defendant is only pointing to the cases in *Section E* of CABATech's Motion which discusses the manner in which a receivership may be structured when appointed. Defendant mislays the truth when it broadly conflates all of the legal authorities cited in CABATech's Motion with those in *Section E*. Defendant argues for application of caselaw (one single case) that bears no relation to the facts of this case which is distinctly different than CABATech who argues for following the precedent of Ohio caselaw when constructing the manner of the receivership's oversight of the remaining assets of Defendant. *Section E* citations to Ohio legal authorities are there to provide a roadmap for this Court to follow when deciding how best to construct the receivership in this case; whether the receiver should have direct control or merely provide oversight to actions of the Defendant and over what assets should the receiver be placed. Plaintiff is merely requesting this Court to appoint a receiver to provide oversight during the pendency of this matter.

In sum, Defendant's argument in its Memorandum relies upon one district court decision based upon a different set of facts which have no bearing to the case *sub judice*. Defendant's case renders a decision about preliminary injunctions, not receiverships. This Court has the power to appoint a receiver within its broad discretionary power to protect disputed assets during litigation and facilitate equitable distribution, if necessary. Plaintiff need not have solely a legal interest in the disputed assets; nonetheless, Plaintiff does have an equitable interest in the disputed assets being sought to be placed in receivership.

A review of Nextlight's website shows six (6) grow light products available for sale: Mega Pro, Veg8 Pro, Core Pro, Plus Pro, 420h, and 150h, all with the Nexlight brand name. Each of the grow light units listed are "out of stock." *Exhibit A*. However, a search of the internet

9

illustrates that these same Nextlight products that are "out of stock" on its website are available for sale through third party retail vendors. Presumably, Nextlight is selling the grow light units delivered by CABATech for a markup to these other vendors and without having paid its supplier. Defendant ordered 5,035 lighting units from CABATech and paid CABATech for only 5.9% of the units. Appointment of a receiver is necessary to safeguard these grow light units and any proceeds from the sale of these lighting units, allegedly defective or not. Defendant asserts that the delivered and unpaid for lighting units are defective, but also admits that it has no warehouse, inventory, or employees, a curious contradiction. Thus, Plaintiff respectfully requests this Court to grant Plaintiff's Emergency Motion for Appointment of Receivership in this matter.

Respectfully submitted,

*/s/ Jessica A. Barwell*
WESPBARWELL, L.L.C.
Jessica A. Barwell (0088716)
Gregory P. Barwell (0070545)
Jud R. Mauger (0063375)
475 Metro Place South, Suite 430
Dublin, Ohio 43017
Ph & Fax: 614-456-0488
jbarwell@wesplaw.com
gbarwell@wesplaw.com
jmauger@wesplaw.com
Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on all parties of record in this matter, by electronic means, on October 4th, 2022.


<u>/s/ Jessica A. Barwell</u>
Jessica A. Barwell (0088716)